UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT BOWLING GREEN

UNITED STATES OF AMERICA                                          PLAINTIFF

v.                                        CRIMINAL ACTION NO.  1:25-CR-40-GNS

DRAKE MILLER                                                      DEFENDANT

### UNITED STATES' MEMORANDUM IN SUPPORT OF DETENTION
*– Electronically Filed –*

Comes the United States of America, by counsel, Erwin Roberts and Danielle M. Yannelli, Assistant United States Attorneys for the Western District of Kentucky and hereby files this memorandum in support of detention. The Court should detain the defendant pursuant to Title 18, United States Code, Section 3142(e)(3)(E).

### FACTUAL AND PROCEDURAL BACKGROUND

The United States proffers the following factual background. On August 6, 2025, a Grand Jury in the Western District of Kentucky charged the defendant, Drake Miller, with three counts of online enticement, in violation of Title 18, United States Code, Section 2422(b) (Counts 1, 3 and 7) and ten counts of production of child pornography, in violation of Title 18, United States Code, Sections 2251(a) and 22521(e) (Counts 2, 4, 5, 6 and 8-13) based upon Miller using social media platforms such as Discord, Instagram, and Snapchat to groom, entice and exploit three minor victims, who are all under the age of 14, to produce graphic and self-mutilating child sexual abuse materials ("CSAM"). (DN. 1, Indictment).

**Background on Nihilistic Violent Extremist**

Nihilistic Violent Extremists (NVEs) are individuals who engage in criminal conduct within the United States and abroad, in furtherance of political, social, or religious goals that derive primarily from a hatred of society at large and a desire to bring about its collapse by sowing indiscriminate chaos, destruction, and social instability. NVEs work individually or as part of a network with these goals of destroying civilized society through the corruption and exploitation of vulnerable populations, which often include minors.[1]

NVEs, both individually and as a network, systematically and methodically target vulnerable populations across the United States and the globe. NVEs frequently use social media communication platforms to connect with individuals and desensitize them to violence by, among other things, breaking down societal norms regarding engaging in violence, normalizing the possession, production, and sharing of CSAM and gore material, and otherwise corrupting and grooming those individuals towards committing future acts of violence.

Those individuals are targeted online, often through synchronized group chats. NVEs frequently conduct coordinated extortions of individuals by blackmailing them so they comply with the demands of the network. These demands vary and include, but are not limited to, self-mutilation, online and in-person sexual acts, harm to animals, sexual exploitation of siblings and others, acts of violence, threats of violence, suicide, and murder.

Historically, NVEs systematically targeted vulnerable individuals by grooming, extorting, coercing, and otherwise compelling through force, or the threat of force, the victims to mutilate themselves or do violence, or threaten violence, to others and either film or photograph such activity. The members of the network have edited compilation photographs or videos of targeted

---

1 NVEs adhere to an ideology herein defined as Nihilistic Violent Extremism (NVE).

individuals, shared the photographs and videos on social media platforms for several reasons, including to gain notoriety amongst members of the network, and spread fear among those targeted individuals for the purpose of accelerating the downfall of society and otherwise achieving the goals of the NVEs.

NVEs networks have adopted various monikers to identify themselves. The networks have changed names over time, which has led to the creation of related networks. Although the networks change names and use a variety of different social media platforms, the core members and goals remain consistent and align with the overarching threat of NVE.

### 764 and Related Networks

"764" and related groups ("764") are NVEs who engage in criminal conduct within the United States and engage with other extremists abroad. The 764 network's accelerationist goals include social unrest and the downfall of the current world order, including the United States Government. Members of 764 work in concert with one another towards a common purpose of destroying civilized society through the corruption and exploitation of vulnerable populations, including minors. The FBI investigation of Miller has revealed that Miller is the leader of the 764 group "Death Valley" through which Miller engaged in the violations of federal law as charged in the Indictment.

### Millers's Extensive Pattern of Sexual Exploitation of Minors

In November of 2024, an FBI online covert employee ("OCE-1") was operating within the 764 networks and observed two Lorebooks[2] which had been posted by online user. FBI agents were able to determine that the minor victims in the Lorebooks appeared to be victims of sextortion

---

2 A Lorebook is the collection of materials or "lore" about a person stored in one location, such as a Telegram Channel, that is made exclusively to store information, photographs, videos, social media accounts, or other identifying information of that person with malicious intent. The information contained in a Lorebook is often intended to be compromising or embarrassing in nature.

by a Discord user. Upon further investigation, FBI agents were able to link the Discord username to Miller, who was residing the in the Western District of Kentucky. This information was then shared with the Bowling Green FBI Field Office.

Upon receiving the information from the Milwaukee FBI Field Office, SA Eric Stroud, opened an investigation into Miller. The investigation revealed that Miller is a serial online predator who used multiple online platforms to seek out, entice, coerce and threaten multiple minor victims from all over the United States as well as internationally to entice and coerce them to produce sexually explicit images and videos. If at any point, the minor victim refused to comply with Miller's demands he would then threaten them by threatening to kill them, expose their images and videos as well as making "swatting"[3] calls.

The investigation into Miller is complex, widespread and evolving. His reign of terror doesn't stop with the three minor victims he is currently charged with abusing. There are multiple victims that have either not been identified at this time or have been identified but the investigations are still on-going.  The following is a summary of Miller's conduct involving the three minor victims charged in the Indictment.

### Minor Victim 1

From June of 2025 to January of 2025, Miller and Minor Victim 1 (MV1) had sexually explicit communication over multiple different social media platforms. At the very onset of their communication, Miller became aware that MV1 was a minor. During their communication, Miller told MV1 to send him CSAM images and videos. Miller specifically told MV1 what he wanted her to do in the videos.

---

3 Swatting is the action or practice of making a prank call to emergency services in an attempt to bring about the dispatch of a large number of armed police officers to a particular address.

On January 21, 2025, in response to Miller instructing MV1 to take her panties off and send a video of herself masturbating, MV1 sent five videos which depicted her performing that exact sexual act. After receiving the videos, Miller told MV1 to write "Death Valley" on her breast. Six days later, on January 27, Miller instructed MV1 to get her "blades" and "you need to write my name tho."  MV1 was reluctant at first, advising she was scared to do it, but Miller coerced her into carving his monogram "SEMP" into her thigh and send a picture to him proving she had done it, which she did.[4]

### Minor Victim 2

From December 2024 to February 2025, Miller and Minor Victim 2 (MV2) had sexually explicit communication over Discord and Snapchat.  In the first documented communication between the two, Miller told MV2 that he owned her body and instructed her to find a razor blade, go to the bathroom and cut her thigh. Like MV1, Miller became aware early on in their communication that MV2 was a minor.  Not only did Miller instruct MV2 to send self-mutilating videos, but he also instructed her to send sexually explicit videos, such as instructing her to use other objects within her home to use to masturbate.

During their communication, MV2 sent multiple CSAM videos as well as self-mutilating videos all at the request of Miller. If MV2 refused to comply with any of Miller's demands or if he believed she was communicating with other men online he would threaten to expose her by posting a lorebook.[5]

---

4 Screenshots of the videos described in this paragraph will be made available for review by the Magistrate Judge and will be kept under seal to meet the requirements of the Crime Victims' Rights Act, 18 U.S.C. § 3771.

5 Screenshots of the videos described in this paragraph will be made available for review by the Magistrate Judge and will be kept under seal to meet the requirements of the Crime Victims' Rights Act, 18 U.S.C. § 3771.

**Minor Victim 3**

From January 2025 to May 2025, Miller and Minor Victim 3 (MV3) had sexually explicit communication over Discord, Instagram and Snapchat. During their communication, Miller was aware that MV3 was a minor. The communication with MV3 escalated quickly to Miller threaten to kill her, threatening to send her nude videos to a family member, and threatening to "swat" her by saying he had her address and that he has already reported it to the FBI, police and CPS. Throughout their communication, Miller instructed MV3 to send multiple videos of her self-mutilating as well as videos of her masturbating.[6]

A detention hearing is scheduled for Thursday, September 18, 2025. At the hearing, the United States does not intend to call any witnesses.

**LEGAL STANDARD**

The Bail Reform Act of 1984, 18 U.S.C. § 3142 *et seq*., provides, in pertinent part, that if a judicial officer finds by clear and convincing evidence that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the [defendant] before trial." 18 U.S.C. § 3142(e). Thus, even if a defendant is not considered a flight risk, his or her danger to the community alone is sufficient reason to order pretrial detention, and vice versa. *United States v. Salerno*, 481 U.S. 739, 755 (1987); *United States v. Perry*, 788 F.2d 100, 113 (3d Cir. 1986); *United States v. Sazenski*, 806 F.2d 846, 848 (8th Cir. 1986). Where the judicial officer's justification for detention is premised upon the safety of the community, the decision must "be supported by clear and convincing evidence." 18 U.S.C. § 3142(f)(2).

---

6 Screenshots of the videos described in this paragraph will be made available for review by the Magistrate Judge and will be kept under seal to meet the requirements of the Crime Victims' Rights Act, 18 U.S.C. § 3771.

Section 3142 imposes a rebuttable presumption of dangerousness or flight risk on defendant's charged offenses involving a minor victim including receipt of child pornography. *See* 18 U.S.C. § 3142(e)(3). For purposes of determining whether a rebuttable presumption is triggered, "[a] grand jury indictment, by itself, establishes probable cause to believe that a defendant committed the crime with which he is charged." *United States v. Stone*, 608 F.3d 939, 945 (6th Cir. 2010); *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996) ("[T]he indictment alone would have been enough to raise the rebuttable presumption that no condition would reasonably assure the safety of the community.").

The presumption applies here because the grand jury charged the defendant with violating 18 U.S.C. § 2252A(a)(2) a crime involving a minor. Accordingly, this Court must presume "that no condition or combination of conditions will reasonably assure [(1)] the appearance of the person as required and [(2)] the safety of the community." 18 U.S.C. § 3142(e)(3)(B).

Once the rebuttable presumption is triggered, it imposes a "burden of production" on the defendant to offer some credible evidence contrary to the statutory presumption. *Stone*, 608 F.3d at 945. The defendant must offer not mere speculation, but "at least some evidence," or basis to conclude that the presumption has been rebutted in his or her case. *Stone*, 608 F.3d at 945-46. Specifically, "a defendant should 'present all the special features of his case' that take it outside 'the congressional paradigm'" giving rise to the presumption. *Id.* at 946 (quoting *United States v. Jessup*, 757 F.2d 378, 387 (1st Cir. 1985)); *see also United States v. Portes*, 786 F.2d 758, 764 (7th Cir. 1985) (presumptions in § 3142(e) "are 'rebutted' when the defendant meets a 'burden of production' by coming forward with some evidence that he will not flee or endanger the community if released").

7

"Even when a defendant satisfies his burden of production, however, the presumption favoring detention does not disappear entirely, but remains a factor to be considered among those weighed by the district court." *Stone*, 608 F.3d at 945 (citing *United States v. Mercedes*, 254 F.3d 433, 436 (2d Cir. 2001)). This is so because the presumption is not simply an evidentiary tool designed for the courts, but rather an expression of Congress's substantive judgment that particular classes of offenders should ordinarily be detained prior to trial. *Id.* at 945-46 (citation omitted)*; see also United States v. Dominguez*, 783 F.2d 702, 707 (7th Cir. 1986) ("[T]he presumption of dangerousness . . . represents Congressional findings that certain offenders . . . are likely to continue to engage in criminal conduct undeterred either by the pendency of charges against them or by the imposition of monetary bond or other release conditions.").

If the presumption of detention is rebutted, the factors to be considered in determining whether to release a defendant pending trial are set forth in 18 U.S.C. § 3142(g) and include: (1) the nature and circumstances of the offenses charged, including whether the offense is a crime of violence or involves a minor victim; (2) the weight of the evidence against the person; (3) the history and characteristics of the person, including family ties, the person's character, ties to the community, and criminal history; and (4) the nature and seriousness of danger to any person or the community that would be posed by the person's release.

## ANALYSIS

### 1.    Application of the Rebuttable Presumption

The rebuttable presumption in favor of pretrial detention pursuant to 18 U.S.C. § 3142(e)(3)(B) applies here. While the government believes Miller might have rebutted the presumption that he is a flight risk, given the fact that the main reason for risk of nonappearance are the pending charges, Miller has failed to produce credible evidence contrary to the statutory

presumption of his dangerousness were he to be released. *See Stone,* 608 F.3d at 945. Congress has instructed that individuals who, like the defendant, have been charged with a particular offense involving a minor victim, such as production of child pornography and online enticement, presumptively pose a danger to the community. Miller failed to offer any evidence that he is not a danger to the community. Therefore, Miller failed to overcome the presumption "that no condition or combination of conditions will reasonably assure . . . the safety of the community." 18 U.S.C. § 3142(e)(3)(B).

**2.      Application of the § 3142(g) Factors**

If the court finds that Miller has fully rebutted the presumption of detention, the Court should consider the Bail Reform Act's four § 3142(g) factors. Considering these factors, the conclusion is the same: the defendant should be held without bond pending trial. All four factors under 18 U.S.C. § 3142(g) support detention of Miller and outweigh evidence presented by the Miller to rebut the statutory presumption in favor of detention. Further, where, as here, a rebuttable presumption applies, it "remains a factor" militating against release, to be weighted along with other evidence relevant to factors listed in § 3142(g), even if Miller has met his burden of production of offering some credible evidence to the contrary. *Stone,* 608 F.3d at 945. An analysis of the § 3142(g) factors reveal the defendant should be detained.

**a.  The Nature and Circumstances of the Crime Support Detention**

The first factor, the nature and circumstances of the charged offense, favors detention. This factor asks the Court to consider "the nature and circumstances of the offense charged" as a general matter but especially points to instances where "the offense involves a minor victim." 18 U.S.C. § 3142(g)(1). All fifteen charges involve minor victims and therefore fall into the categories identified by Congress as those in which the nature and circumstances favor detention. The online

enticement charges carry a mandatory minimum of 10 years, with a maximum sentence of life. The production of child pornography charges carry a mandatory minimum of 15 years, with a maximum sentence of 30 years, reflecting Congress' judgment as to the seriousness of the offense. 18 U.S.C. § 2252A(b)(1).

Miller's criminal conduct weighs heavily in favor of detention.

Miller is a leader of a dangerous 764 group. He is a serial online predator who used multiple online platforms to seek out minor victims, to entice them, to produce images and videos of CSAM. He also threatened his victims with threats of ruining their lives and families, producing and sending Lorebooks, and swatting them. He coerced his victims into self-harm, specifically cutting themselves for him. Even though the defendant is not charged with hands-on offenses, the defendant's crimes are serious. By his conduct, the defendant is contributing directly to the harm inflicted on his minor victims. Miller's actions contribute to the cycle of abuse and is responsible for the harm that is caused on the minor victims.

### b. The Weight of the Evidence Supports Detention

Second, the weight of the evidence against Miller – as it pertains to dangerousness[7] – is substantial and favors detention.  As outlined above, not only did Miller use multiple online platforms to seek out minor victims, to entice them, to produce images and videos of CSAM, he also threatened his victims with threats of ruining their lives and families, producing and sending Lorebooks, and swatting them. He coerced his victims into self-harm, specifically cutting themselves for him. Also, the numerous search warrant returns for Miller's online social media accounts confirmed Miller's identity, location and conduct during the date ranges contained within the Indictment.

---

7 "This factor goes to the weight of the evidence of dangerousness, not the weight of the evidence of the defendant's guilt." *Stone*, 608 F.3d at 948.

### c.  Miller's History and Characteristics Support Detention

The third factor concerns the history and characteristics of Miller. This factor covers a wide range of issues including the person's character, family ties, employment, financial recourses and criminal history. As noted in the pretrial services report, the defendant has a related state criminal case in Minnesota. It is important to note that the defendant continued to contact his minor victims after he was notified of his Minnesota criminal case. Miller does have family ties to the community. Miller had been living with family members during the timeframe that is alleged in the Indictment. Even with strong family and personal ties, however, Miller was able to secretly engage in his abusive conduct right under his family's watch. Therefore, Miller's history and character favors detention rather than release.

### d.  The Nature and Seriousness of the Danger to Children and the Community

As to the final factor, the nature and seriousness of danger to any person or the community that would be posed by the person's release, the Government submits that Miller is the leader of a 764 group and a serial online sexual predator to minors and has engaged in a pervasive patter of criminal activity. The evidence shows that Miller poses a real and continuing danger to the community and represents a risk of re-offending if released into the community. Moreover, with a crime of violence involving the sexual exploitation of children, there are grave concerns regarding the safety of the community and children. Therefore, the United States contends that the defendant should be detained pending trail.

### **CONCLUSION**

Based on the foregoing, the United States respectfully submits that it has met its burden of persuasion to demonstrate that the statutory presumption in favor of detention applies in this case. Furthermore, deliberative evaluation of the factors to be considered when determining whether

11

there are conditions of release that will reasonably assure the safety of any other person and the community weigh in favor of detention. Therefore, the United States respectfully submits that the defendant should be detained pending trial.

<div style="margin-left:50%">

Respectfully submitted,

KYLE G. BUMGARNER
United States Attorney


_____
Danielle M. Yannelli
Erwin Roberts
Assistant United States Attorneys
717 West Broadway
Louisville, Kentucky 40202
(502) 582-6942 (Tel.)

</div>

## CERTIFICATE OF SERVICE

I hereby certify that on September 17, 2025, I electronically filed the foregoing document with the clerk of the court by using the CM/ECF system, which will send a notice of electronic filing to Counsel of record.

_____
Danielle M. Yannelli
Erwin Roberts
Assistant United States Attorneys

12